UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL MCGEE, | ) | |
| | ) | No. 1:23-CV-01925 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ANGEL GOMEZ, MELISSA ALTMAYER, | ) | |
| and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Nathaniel McGee was arrested by Chicago police officers Angel Gomez and Melissa Altmayer after being suspected of pulling out a gun and threatening a woman. R. 1, Compl. ¶¶ 5–6, 8, 10–11, 14, 17.[1] But McGee argues that the officers lacked probable cause to arrest him. *Id.* ¶ 23. So he sued Gomez and Altmayer, bringing false arrest and malicious prosecution claims against them. *Id.* at 3–4.[2] McGee also brought an indemnification claim against the City of Chicago. *Id.* at 4–5.

The Defendants now move to dismiss for failure to state a claim, asserting that Gomez and Altmayer *did* have probable cause to arrest McGee. R. 22, Defs.' Mot. Because the officers had at least arguable probable cause for the arrest, they are entitled to qualified immunity, which is fatal to all of McGee's claims. So the Defendants'

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2] The Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over the state law indemnification claim pursuant to 28 U.S.C. § 1367.

motion to dismiss is granted. For now, the dismissal is without prejudice to give McGee a chance to amend the complaint.

## I. Complaint Allegations

At the pleading stage, the ordinary rule is to accept the Complaint's allegations as true. But there is a body-worn camera video recording of some of the underlying events. As explained in more detail in the next section, that means some of the facts are supplied by the video recording. This section sets forth the allegations in the Complaint. On March 31, 2021, around 2:00 a.m., Nathaniel McGee was dropped off in the parking lot of his fiancé's apartment complex. Compl. ¶ 8. McGee alleges that as he walked across the parking lot, Chicago Police officers Angel Gomez and Melissa Altmayer stopped him, suspecting that he was the perpetrator of an assault that had been reported at the apartment complex. *Id.* ¶¶ 9–10. McGee says that he immediately disclosed to the officers that he was lawfully carrying a concealed firearm. *Id.* ¶ 11. The officers then allegedly ordered McGee to get on his knees, and they proceeded to search him. *Id.* ¶ 12. McGee claims that he peacefully complied. *Id.* ¶ 13. According to McGee, although he asked the officers to examine his concealed-carry license, they refused to do so. *Id.* ¶ 15. Instead, they arrested McGee and took him to the police station. *Id.* ¶¶ 14, 19.

McGee also alleges that the arrest was improper because there is an "audio" recording of the officers admitting that McGee was not the perpetrator of the assault. *Id.* ¶ 18. McGee says that the officers arrested him despite knowing that he did not commit the crime. *Id.* ¶ 19. McGee then spent two days in jail. *Id.* ¶ 20. He claims

2

that he suffered damages from the arrest and detention, including the loss of employment, loss of liberty, emotional distress, and financial expenses. *Id.* ¶ 21. So McGee brought this lawsuit. He brings a claim for false arrest, 42 U.S.C. § 1983, against Gomez and Altmayer. Compl. at 4. And he also seems to bring a § 1983 malicious prosecution claim against the two officers. *Id.* Finally, McGee brings an indemnification claim against the City of Chicago. *Id.* at 4–5.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

Before getting into the merits of McGee's claims, it is worth explaining why the Court considers Gomez's and Altmayer's body-worn camera footage at the pleading stage. It is true that courts are typically limited to the four corners of the pleadings in evaluating a motion to dismiss. Here, however, McGee himself references and relies on the "audio recording" in his Complaint. Compl. ¶ 18. Also, when the defense relied prominently on the video recordings in moving to dismiss, McGee did *not* respond by arguing that the Court should not rely on the recordings. *See* R. 31, Pl.'s Resp. Br. Indeed, in his response brief, McGree repeatedly referred to and relied on the footage for various facts. *Id.* So it is fair game for the Court to rely on the footage at this stage to determine what actually took place in the leadup to, and during, McGee's arrest. At the same time, the Court bears in mind that off-camera facts are still limited to the four corners of the Complaint.

Moving on to McGee's claims: Officers Gomez and Altmayer argue that they are entitled to qualified immunity on both the false arrest and malicious prosecution claims. Defs.' Mot. at 12. Specifically, they contend that the officers are entitled to

4

qualified immunity because they had "arguable probable cause." *Id.* That argument succeeds and undermines all of McGee's claims.

In applying qualified immunity to the Fourth Amendment's probable-cause requirement, an officer is entitled to qualified immunity if arguable probable cause existed to detain the plaintiff. *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). "Arguable probable cause exists when a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id.* (cleaned up). Probable cause "exists when the facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Id.* (cleaned up).

Here, the facts and circumstances within Gomez's and Altmayer's knowledge were enough to constitute arguable probable cause. The officers arrived at the scene in response to a call saying that someone matching McGee's description had a gun and was threatening a woman. R. 25, Gomez Body Cam at 3:00–10; R. 25, Altmayer Body Cam at 6:00–20. Then, once they got to the parking lot, Gomez and Altmayer found McGee detained by private security guards who had been patrolling the lot. Gomez Body Cam at 2:20–3:00. McGee immediately declared to the officers that he had a gun on him and said, "I'm licensed," which meant that he had a concealed-carry license. *Id.* Altmayer then searched McGee and found the gun in his waistband. *Id.* at 3:05–15.

5

Once the officers recovered McGee's gun, they discovered that the gun had a modification switch on it that allows it to become fully automatic. Gomez Body Cam at 4:50–5:30; 6:55–7:05. Under Illinois law, it is illegal to possess a converted fully automatic gun like this. 720 Ill. Comp. Stat. 5/24-1(a)(7)(i). And when Gomez told McGee that the gun was fully automatic and that he was not allowed to have a weapon like that, McGee did not protest or deny either statement. Gomez Body Cam at 11:50–12:30. So recovering McGee's illegal firearm gave the officers an independent and sufficient basis for arguable probable cause to arrest McGee.

But that is not all. Gomez and Altmayer also interviewed the assault victim and asked her what happened. She told the officers that McGee "pulled up in a white car … jumped out, [and] pulled a gun on her." Gomez Body Cam at 9:15–30. And the victim later confirmed that it was McGee who committed the assault, describing to the officers what he was wearing. *Id.* at 19:20–40 ("That guy has a black skull cap and a red vest.").

Finally, Gomez spoke with the security guard who initially detained McGee. The guard explained that he got a call from the victim about someone who came out of a white car and pulled a gun on her. Gomez Body Cam at 13:00–55. Then the guard arrived at the parking lot and saw McGee walking around. *Id.* When the guard approached McGee, McGee lifted his shirt, showed the guard his gun, and told him, "I've got a gun too." *Id.* Thus, both the victim and the security guard corroborated that McGee had a gun on him and committed the assault. *Id.* at 9:15–30, 13:00–55, 19:20–40. This information, especially combined with the fact that the officers found McGee

6

with an illegal automatic firearm on his person, was more than enough for Gomez and Altmayer to reasonably believe that McGee had committed a crime, warranting his arrest. *See Moorer v. City of Chicago*, 92 F.4th 715, 721 (7th Cir. 2024) ("[A]n identification by even one eyewitness who lacks an apparent grudge against the accused person is sufficient to demonstrate probable cause.").

It is also worth noting that the body cam footage disproves several of the allegations in McGee's Complaint. First, McGee alleges that the officers ordered him to get on his knees for a search. Compl. ¶ 12. But the footage shows that McGee volunteered to get on the ground, telling officers, "I can get down on the ground." Altmayer Body Cam at 2:10–20. Second, McGee claims that the officers refused to examine his concealed-carry license. Compl. ¶ 15. But the video shows that Altmayer removed the license from McGee's wallet, and then Gomez ran it through a database, along with McGee's driver's license. Altmayer Body Cam at 3:30–4:30; Gomez Body Cam at 7:50–8:00. Third, McGee alleges that the officers "are heard on audio recording admitting that [he] was the wrong person for the assault arrest." Compl. ¶ 18. But there is no admission like that at all on either Altmayer or Gomez's body cam footage. *See* Gomez Body Cam; Altmayer Body Cam. They never say that they have the wrong person for the assault. *See* Gomez Body Cam; Altmayer Body Cam. Rather, as explained above, all of the officers' statements leading up to, and after, McGee's arrest confirm that they believed that McGee committed the assault.

So key allegations in McGee's Complaint do not hold up, and Gomez and Altmayer did have arguable probable cause to arrest him. Because they had arguable

7

probable cause, the officers are entitled to qualified immunity on the false arrest and malicious prosecution claims. *Huff*, 744 F.3d at 1007. And because Gomez and Altmayer had qualified immunity, they are shielded from liability on those claims. *White v. Pauly*, 580 U.S. 73, 78–79 (2017). Thus, the Defendants' motion to dismiss is granted.

Lastly, McGee brings an indemnification claim against the City of Chicago, arguing that the City should have to pay McGee for the damages he sustained due to Gomez and Altmayer's actions. Compl. at 4–5. But "[a]n indemnification claim necessarily will be tied to an underlying claim for liability." *Baskins v. Gilmore*, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018). Again, Gomez and Altmayer are shielded from liability on the false arrest and malicious prosecution claims due to qualified immunity. So there are no successful underlying claims for liability, and McGee's indemnification claim fails as well. The Defendants' motion to dismiss is thus granted.

## IV. Conclusion

The Defendants' motion to dismiss, R. 22, is granted, but the claims are dismissed without prejudice for now. McGee may file an amended complaint by April 23, 2025, if he believes that he can fix the problems (though the Court is skeptical that he can).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: April 8, 2025