**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NATHANIEL MCGEE,

      Plaintiff,

      v.

ANGEL GOMEZ, MELISSA ALTMAYER,
and CITY OF CHICAGO,

      Defendants.

No. 1:23-CV-01925

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Nathaniel McGee was arrested by Chicago police officers Angel Gomez and Melissa Altmayer after being suspected of pulling out a gun and threatening a woman. R. 43, First Am. Compl. at 5; R. 51, Pl.'s Resp. at 8–9.[1] But McGee argues that the officers lacked probable cause to arrest him. First Am. Compl. at 4.[2] He also argues that he was racially profiled by the officers. *Id.* So McGee sued Gomez and Altmayer, bringing false arrest, malicious prosecution, and Equal Protection Clause claims against them. *Id.*

The Defendants now move to dismiss McGee's First Amended Complaint for failure to adequately state a claim, asserting that Gomez and Altmayer had probable cause to arrest McGee and that McGee fails to plead discriminatory intent as to his

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331.

Equal Protection Clause claim. R. 46, Defs.' Second Mot. at 6–11. Because the officers had at least arguable probable cause for the arrest, they are entitled to qualified immunity, which is fatal to McGee's false arrest and malicious prosecution claims. And because McGee did not allege any facts to plausibly suggest that Gomez and Altmayer had any discriminatory intent when they arrested him, his Equal Protection Clause claim fails as well. So the Defendants' motion to dismiss is granted. Having had a chance to amend already, the dismissal is with prejudice this time.

## I. Background

### A. Factual Background

At the pleading stage, the ordinary rule is to accept the allegations in the First Amended Complaint as true. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010). The Court will generally do so here, but there is body-worn camera video recording of some of the key events. McGee himself acknowledges, in the First Amended Complaint, that he has viewed body-cam video recordings of the events. First Am. Compl. at 5–6. To the extent that video footage clearly contradicts McGee's allegations, the Court will not "indulge stories clearly contradicted by the footage." *See Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)) (applying same principle at summary judgment stage). To be sure, this case is at the pleading stage, so the general assumption of the truth of the allegations still does apply. Only those parts of the video recordings that are crystal clear in what is being portrayed will be considered in evaluating the dismissal motion.

On March 31, 2021, around 2 a.m. at night, Nathaniel McGee was arrested by Chicago police officers Angel Gomez and Melissa Altmayer in the parking lot of the apartment complex in which his fiancée lived. First Am. Compl. at 5; Pl.'s Resp. at 1–2. By the time that the police officers arrived on the scene, McGee had already been detained by private security guards at the complex; the guards had received a report of a man allegedly pointing a gun at a woman while she was trying to park her car. Pl.'s Resp. at 8–9. The security guards allegedly identified McGee based on the woman's description of the incident. *Id.* at 9. Gomez and Altmayer arrived at the parking lot shortly after McGee had been detained by the security guards. *Id.* The officers allegedly arrested McGee minutes after they arrived. *Id.* at 8–9. McGee says that he disclosed to the officers that he was lawfully carrying a concealed firearm. *Id.* at 10–11.

McGee alleges that the victim described the offender as slim, having "light skin" and no facial hair, and with a height of 5 feet 5 inches. First Am. Compl. at 5. He also alleges that the victim described the offender as wearing a gray-hooded sweatshirt, a black skull cap, a red vest, and red and black jeans. First Am. Compl. at 6; Pl.'s Resp. at 13. McGee asserts that the officers disregarded the victim's description of the offender and arrested him, even though McGee had "dark skin" and facial hair. First Am. Compl. at 6. McGee says that he is 5 feet 10 inches tall and weighs around 200 pounds. *Id.* at 6.

3

### B. Procedural Background

After the state case against McGee was dismissed by the prosecution, Pl.'s Resp. at 13, McGee sued Gomez and Altmayer, asserting false arrest and malicious prosecution claims, *see* R. 1, Compl. ¶¶ 19, 22–24. He also brought a state law indemnification claim against the City. *Id.* ¶¶ 25–27. The Defendants moved to dismiss for failure to state a claim, asserting that Gomez and Altmayer had probable cause to arrest McGee. R. 22, Defs.' First Mot. at 1–2. On that first dismissal motion, the Court held that because the officers had at least arguable probable cause for the arrest, they were entitled to qualified immunity. R. 42, Op. at 1. So the Court dismissed the claims, though without prejudice to give him a chance to amend the complaint. *Id.* at 2.

### II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up). At the same

time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

"[W]hen evaluating the sufficiency of a complaint," the Court may also consider "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss … so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (cleaned up); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (describing how "a party opposing a Rule 12(b)(6) motion

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" and "may find it prudent to do so"). Moreover, in evaluating a *pro se* complaint, the Court applies a less stringent standard than formal pleadings drafted by lawyers. *Smith*, 803 F.3d at 309.

### III. Analysis

Before discussing the merits of McGee's claims, it is worth elaborating on why the Court considers Gomez's and Altmayer's body-worn camera footage at the pleading stage. As explained earlier, when video footage is clear and establishes specific facts, then they can trump allegations to the contrary. *See Horton*, 883 F.3d at 944. McGee himself refers to and relies on the body-worn camera footage in his First Amended Complaint. *See* First Am. Compl. at 5. Also, in response to the defense's reliance on video recordings in moving to dismiss, McGee even acknowledged that "[c]ourts may rely on video evidence at the pleading stage." Pl.'s Resp. at 29. McGee also repeatedly referred to and relied on the footage for various facts. *See, e.g.*, *id.* at 9–13. So, it is fair game for the Court to rely on the footage at this stage to determine what actually happened in the lead-up to McGee's arrest. At the same time, it is important to bear in mind that off-camera facts are still limited to the four corners of the First Amended Complaint.

### A. False Arrest and Malicious Prosecution

McGee brings false arrest and malicious prosecution claims against Gomez and Altmayer under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490

6

U.S. 386, 393–94 (1989) (cleaned up). So plaintiffs must adequately allege that they were "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). McGee alleges that Gomez and Altmayer violated his rights because they did not have probable cause to arrest him, which the Court understands to be a Fourth Amendment false-arrest claim. First Am. Compl. at 4.

In moving to dismiss, Gomez and Altmayer argue that they remain entitled to qualified immunity on the false arrest and malicious prosecution claims because they had "arguable probable cause" that McGee had committed a crime. Defs.' Second Mot. at 6–8. As explained next, the Court agrees that the officers had at least arguable probable cause to arrest McGee, and before that, enough reasonable suspicion to detain him while the officers investigated.

The Fourth Amendment protects persons from "unreasonable searches and seizures." U.S. Const. amend. IV. Generally, seizures are "reasonable" only when they are based on probable cause. *Dunaway v. New York*, 442 U.S. 200, 213 (1979). But if officers stop short of a full-blown arrest to conduct a brief investigatory stop, then only reasonable suspicion is required. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). In *Terry*, the Supreme Court held that police officers may briefly detain a person for investigatory purposes based on the less exacting standard of reasonable suspicion that criminal activity is afoot. *Id.* Reasonable suspicion exists only when an officer can present "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Federal courts

7

"look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (cleaned up). Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or hunch of criminal activity" but "considerably less than preponderance of the evidence." *Illinois v. Wardlaw*, 528 U.S. 119, 123–24 (2000) (cleaned up). The determination of reasonable suspicion "must be based on commonsense judgments and inferences about human behavior." *Id.* at 125. An officer conducting a *Terry* stop may pat down a suspect to search for weapons, *Terry*, 392 U.S. at 26, but only if "specific and articulable facts" support a suspicion that the arrestee is armed and presents a risk of harm to officers or to others, *United States v. Brown*, 232 F.3d 589, 592 (7th Cir. 2000).

Here, after Officers Gomez and Altmayer arrived on the scene and first detained McGee, the officers had reasonable suspicion to do so. The officers had received a call reporting that a man had a gun in the parking lot. R. 46-1, Gomez Body Cam at 3:00–10; R. 46-2, Altmayer Body Cam at 6:00–20. Remember that this was around 2 a.m. at night, First Am. Compl. at 5, when very few pedestrians are out and about. Once the officers arrived at the parking lot, they found McGee already detained by private security guards.[4] Gomez Body Cam at 2:15–3:00; Altmayer Body Cam at 2:05–

---

[4]The security guards detained McGee before the officers arrived on the scene. As the Defendants point out, Defs.' Second Mot. at 6–7, the officers had no reason to question the credibility of the security guards who had identified McGee while patrolling the parking lot, *see Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439–40 (7th Cir. 1986) (holding that a security guard's identification of the plaintiff as a shoplifter was sufficient to provide probable cause to lawfully arrest him because "[p]olice have reasonable grounds to believe a guard at a supermarket").

2:40. Within 14 seconds of the officers encountering McGee, McGee said to the officers that he was licensed, meaning that he had a concealed-carry license. Gomez Body Cam at 2:15–30. No more than 35 seconds later, after McGee was handcuffed, Altmayer retrieved the gun from McGee's waistband. Altmayer Body Cam at 2:30–50. This initial stop complied with the requirements for a *Terry* stop and the brevity of this initial detention had not yet transformed the investigatory stop into a full custodial arrest. *See, e.g.*, *United States v. Shoals*, 478 F.3d 850, 853 (7th Cir. 2007) (per curiam) (explaining that *Terry* stops do not necessarily transform into full custodial arrests even when officers draw their firearms or handcuff the subject, especially when the encounter was inherently dangerous); *United States v. Bullock*, 632 F.3d 1004, 1016, 1018 (7th Cir. 2011) (explaining that handcuffing the suspect and placing him in a squad car during the investigation was reasonable under *Terry*).

After recovering the gun from McGee, the officers had arguable probable cause to arrest McGee. "Probable cause exists when the facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (cleaned up). In applying qualified immunity to the Fourth Amendment's probable-cause requirement, an officer is entitled to qualified immunity if arguable probable cause existed to detain the plaintiff. *Id.* "Arguable probable cause exists when a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question

9

could have reasonably believed that probable cause existed in light of well-established law." *Id.* (cleaned up).

Here, upon examination of McGee's gun—this is around just 2½ minutes after first encountering McGee—Gomez discovered that the gun had a modification switch that transformed it into a fully automatic firearm. Gomez Body Cam at 4:40–6:10; 6:50–7:05. Not surprisingly, possession of a converted fully automatic gun is illegal under Illinois law.[5] 720 ILCS 5/24-1(a)(7)(i). When Gomez told McGee that his gun was fully automatic and that he is not allowed to have a firearm like that—even with a concealed-carry license—McGee did not protest or deny that the gun had an automatic converter on it. Gomez Body Cam 11:40–12:15. That possession alone provided an independent and sufficient basis for arguable probable cause to arrest McGee.

It is true that there are physical dissimilarities between the victim's description of the offender and McGee. *See* First Am. Compl. at 5–6. But none of that matters for purposes of arguable probable cause to arrest McGee for possessing an automatic firearm. Because Officers Gomez and Altmayer had arguable probable cause to arrest McGee for the automatic-firearm offense, the officers are entitled to qualified immunity on the false arrest and malicious prosecution claims. *See Huff*, 744 F.3d at 1007.

---

[5]McGee argues that automatic firearms did not become illegal until the Protect Illinois Communities Act went into effect on January 10, 2023. Pl.'s Resp. at 16. That is not accurate, because Illinois enacted a ban on automatic firearms back in 1999. Under Section 24-1 of the Illinois criminal code, it has been unlawful since then to possess "a machine gun, which shall be defined … as any weapon, which shoots … automatically more than one shot without manually reloading by a single function of the trigger …." 720 ILCS 5/24-1(a)(7)(i) (eff. Jan. 1, 1999).

## B. Equal Protection Clause

McGee also brings an equal protection claim against the officers. First Am. Compl. at 4; Pl.'s Resp. at 39–42. The Equal Protection Clause of the Fourteenth Amendment prohibits state and local government officials from discriminating on the basis of certain protected classifications or treating a person irrationally as a so-called "class of one." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). For a class-based equal protection claim to survive a motion to dismiss, plaintiffs must sufficiently allege that they were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent. *See Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). The other form of an equal protection claim—a "class of one" claim—requires the plaintiff to allege that (1) a state actor intentionally treated them "differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget*, 595 F.3d at 695.

McGee alleges that he was arrested even though (to repeat) the victim described the offender as around 5 feet 5 inches tall, slim, and having light skin. First Am. Compl. at 5–6; Pl.'s Resp. at 39. McGee describes himself as 5 feet 10 inches tall, weighing roughly 200 pounds, and having dark skin. First Am. Compl. at 6; Pl.'s Resp. at 39. In McGee's view, his arrest despite the alleged physical differences was impermissible racial profiling and discrimination. First Am. Compl. at 4. The Defendants argue that the equal protection claim fails because he has not alleged enough facts to raise a plausible inference of race discrimination. Defs.' Second Mot. at 9–12.

The defense is correct: McGee has not alleged sufficient facts to establish an equal protection claim based on race. Indeed, he has not set forth *any* facts that would raise an inference of race discrimination. "Discriminatory purpose means more than simple knowledge that a particular outcome is the likely consequence of an action; rather, discriminatory purpose requires a defendant to have selected a particular course of action at least in part because of its adverse effects upon an identifiable group.'" *Alston v. City of Madison*, 853 F.3d 901, 907 (7th Cir. 2017) (cleaned up). All that McGee can argue is that Officers Gomez and Altmayer engaged in intentional discrimination because he was arrested "so fast." Pl.'s Resp. at 40. But even viewed in McGee's favor, the speed of the arrest does not raise a plausible inference of racial motivation. That is especially true where, just 2½ minutes after the officers encountered McGee, they learned that he was in possession of an illegal automatic firearm. Gomez Body Cam at 4:40–6:10; 6:50–7:05. Also, the private security guards had already identified and detained McGee as a man with a gun in that particular parking lot at 2 a.m. Gomez Body Cam at 2:15–3:00; Altmayer Body Cam at 2:05–2:40. Discrepancies between a witness's description of the physical appearance of an offender and an officer's observation do not automatically negate probable cause. *See Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018). And alleging discriminatory intent "generally" is not enough to meet the pleading standard required by Rule 8. *Ashcroft*, 556 U.S. at 686–87; *see also Davis v. Frapolly*, 717 F. Supp. 614, 616 (N.D. Ill. 1989) (dismissing an equal protection claim where plaintiff alleged that he was arrested, detained, and charged solely because he is a black man because "[t]here is not one

12

fact from which the court can draw an inference that defendant's actions were at all motivated by plaintiff's race"). The equal protection claim must be dismissed.

## IV. Conclusion

The Defendants' motion to dismiss, R. 46, is granted. Given that McGee has already amended his pleading once after a prior dismissal, and given the absence of any other proposed facts that he would add to another amended complaint, this time the case is dismissed with prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2026

13